IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


**JOHN PAUL LANIER,**

      **Plaintiff,**

vs.                                                                                           No.  10cv0761 DJS

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's (Lanier's) Motion to Remand or Reverse Administrative Agency Decision **[Doc. No. 16 ]**, filed December 16, 2010, and fully briefed on February 24, 2011.  On September 30, 2010, the Commissioner of Social Security issued a final decision denying Lanier's claim for disability insurance benefits and supplemental security income.  Lanier seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to remand is well taken and will be **GRANTED.**

### I.  Factual and Procedural Background

Lanier, now fifty-nine years old (D.O.B. November 18, 1951), filed his application for disability insurance benefits and supplemental security income payments on November 18, 2008, and November 21, 2008, respectively (Tr. 10), alleging disability since April 30, 2007, due to major depression and anxiety (Tr. 13).  Lanier has a college education and past relevant work as a cook, general manager, assistant manager, student aide, tutor, and web master (Tr. 145).  On

September 30, 2009, the ALJ denied benefits, finding Lanier was not disabled as he retained "a residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember, and carry out simple instructions; attend and concentrate for two hours at a time; respond appropriately to changes in a work setting; and deal with the public no more than is incidental to the work."  Tr. 15.  The ALJ further found Lanier's testimony was "credible to the extent to the extent that it is consistent with his residual functional capacity . . . ."  Tr. 24.

On July 15, 2010, the Appeals Council denied Lanier's request for review of the ALJ's decision.  Tr. 2.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Lanier seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his

decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

"'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)(quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The court "may not 'displace the agenc[y]'s choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zolantski*, 372 F.3d at 1200).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse and remand, Lanier makes the following arguments: (1) the ALJ failed to consider all of his severe impairments at step two of the sequential evaluation process; (2) the ALJ erred in failing to apply the criteria of Social Security Ruling 09-03p; (3) the ALJ erred in his step three findings; and (4) the ALJ erred in his RFC findings at step five and erred in relying on the vocational expert's testimony based on an RFC that did not include all limitations.

**A.  Step Two Findings**

At step two of the sequential evaluation process, the claimant bears the burden to demonstrate that he has a medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities. 20 C.F.R. §§404.1520(c), 416.920(c); *see also*, *Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987).  Basic work activities are "abilities and aptitudes necessary to do most jobs," and include the ability to understand, remember, and carry out simple instructions; to use judgment; to respond appropriately to supervisors, co-workers, and usual work situations; and to deal with changes in a routine work setting. 20 C.F.R. §§404.1521(b)(3)-(6), 416.921(b)(3)-(6).

The step two severity determination "is based on medical factors alone, and . . . does not include consideration of such vocational factors as age, education, and work experience." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988); 20 C.F.R. §§404.1520(cZ), 416.920(c). Although step two requires only a "de minimis" showing, the mere presence of a condition or ailment documented in the record is not sufficient to prove that the plaintiff is significantly limited in the ability in the ability to do basic work activities, *see Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). To meet his burden Lanier must furnish medical and other evidence to support his claim. *Bowen v. Yuckert*, 482 U.S. at 146 & n.5.

Once an ALJ determines that the claimant suffers from one or more medically determinable severe impairments, he moves to the next step in the sequential evaluation process. *See Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir.2007)(once the ALJ finds that the claimant has any severe impairment, he has satisfied the step two analysis). "Under the regulations, once an ALJ finds that a claimant has at least one severe impairment, he does not err in failing to designate other disorders as severe at step two, because at later steps the agency will consider the combined effect of all of claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Barrett v. Astrue*, 340 F.App'x 481, 484 (10th Cir. 2009)(internal citations omitted).

At step two of the sequential evaluation process, the ALJ found Lanier had "a 'severe' psychological impairment consisting of a recurrent major depressive disorder." Tr. 13. The ALJ further found Lanier "was diagnosed with a chronic post-traumatic stress disorder (PTSD) on only one occasion although he did have a traumatic childhood." *Id*. Furthermore, the ALJ noted "this diagnosis was made by a nurse and not a doctor" and thus found "that claimant does not have a 'severe' PTSD in the present case." *Id.* Because the ALJ found that Lanier had a

medically determinable severe impairment (depression), his failure to find his anxiety disorder was a severe impairment at step two is not grounds for reversal.

Therefore, once an ALJ finds a severe impairment at step two, unless he finds the impairment equal a Listing at step three, he proceeds to step four. See 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Williams v. Bowen*, 844 F.2d at 751.  Step four is comprised of three phases:

> In the first phase, the ALJ must evaluate a claimant's physical and mental ... (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir.1996) (citations omitted).

In determining the claimant's RFC at phase one, the ALJ is required to consider **all** of the claimant's impairments, including impairments that are not severe. See 20 C.F.R. §§ 404.1545, 416.945; *see also Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir.2010). In making his RFC determination, the ALJ did not consider Lanier's anxiety disorder.

Lanier, who received most of his mental health care from Healthcare for the Homeless, alleged he was disabled due to depression and anxiety. *See e.g.* Tr. 161, 165,166, 302, 304, 314. The agency's consultative psychologist also noted Lanier alleged depression and anxiety (Tr. 314), noting in his diagnosis "R/O Panic Disorder without agoraphobia."  As Lanier points out, panic disorder is another subsection of anxiety disorder.  20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.06 A3.  Lanier's treating psychiatric care providers, Anita Willard, APRN-BC and Peggy Harter, LPCC documented numerous symptoms of anxiety disorder.  *See e.g.* Tr. 370, 385, 386, 388, 389, 390, 429, 431.

Ms. Willard, Lanier's treating psychiatric nurse practitioner, completed a Mental Residual Functional Assessment form on December 9, 2008, opining Lanier met the criteria of §12.04 of the Listing of Impairments (Affective Disorders) and §12.06 (Anxiety Related Disorders).  Tr. 364-369).  On June 26, 2009, Ms. Harter, Lanier's treating therapist and a Licenced Professional Clinical Counselor, completed a Questionnaire also opining Lanier met the criteria of the §§12.04 and 12.06 of the Listing of Impairments.  Moreover, except for one GAF score of 65, Lanier's GAF scores were consistently low, ranging from 25 to 50.[1]  A low GAF score standing alone does not necessarily evidence an impairment seriously interfering with a claimant's ability to work.  However, a GAF score of fifty or less does suggest an inability to keep a job.  *Oslin v. Barnhart*, 69 F.App'x 942, 947 (10th Cir. 2003).

**B.  Social Security Ruling 06-03p**

Nonetheless, the ALJ gave "little weight" to the opinions of Ms. Willard and Ms. Harter because these "health practitioners [were not] acceptable medical sources qualified to make diagnoses or findings concerning the claimant's abilities to function on a regular and ongoing basis."  Tr. 24.  Accordingly, Lanier contends the ALJ failed to follow the criteria set forth in Social Security Ruling 06-03p when addressing the opinions of his psychiatric nurse practitioner and therapist.

Although a nurse practitioner and a therapist are not considered "acceptable medical sources" for *diagnosing* an impairment under the regulations, the agency has made clear that the

---

[1] Global Assessment of Functioning (GAF score) is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision 4th ed. 2000)(DSM-IV-TR).  The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death.).  DSM-IV-TR at 34.

opinion of such an "other source" is relevant to the question of *severity* and *functionality*. *Carpenter v. Astrue*, 537 F.3d 1264 (10th Cir. 2008). Social Security Ruling 06-03p states in relevant part:

> "Other Sources"
>
> In addition to evidence from "acceptable sources," we may use evidence from "other sources," as defined in 20 C.F.R. §404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to:
>
> Medical sources who are not "acceptable medical sources," such as **nurse practitioners**, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and **therapists**; and
>
> \*\* \*\* \*\* \*\* \*\*
>
> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, <u>information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.</u>
>
> \*\* \*\* \*\* \*\* \*\*
>
> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. <u>Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in file.</u>

SSR 06-03p, 2006 WL 2329939 at *2-*5 (emphasis added). Social Security Ruling 06-03p sets forth the factors an ALJ must consider when evaluation opinion evidence from these medical sources. The ALJ failed to comply with Social Security Ruling 06-03p. Accordingly, the Court will remand this case to allow the ALJ to reconsider the opinions of Ms. Willard and Ms. Harter as required by Social Security Ruling 06-03p and determine at step three whether Lanier meets

8

§§12.04 and 12.06 of the Listing of Impairments.  If the ALJ proceeds to step four, he must also consider all of Lanier's severe impairments in his step four analysis and redetermine his RFC.

## C.  Conclusion

The Court's role is to review the record to ensure that the ALJ's decision is supported by substantial evidence and that the law has been properly applied.  After such review, the Court finds that the ALJ's decision is not supported by substantial evidence.  Accordingly, the Court will grant Lanier's motion to remand to allow the ALJ (1) to reconsider the opinions of Ms. Willard and Ms. Harter pursuant to Social Security Ruling 06-03p; (2) to determine at step three whether Lanier meets §§12.04 and 12.06 of the Listing of Impairments, (3) to consider all of Lanier's severe impairments in his step four analysis, and (4) to redetermine Lanier's RFC.

A judgment is accordance with this Memorandum Opinion and Order will be entered.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**